PEOPLE *v.* GRAND TRUNK WESTERN
RAILROAD COMPANY.

1. STATUTES—INTENT.
    A statute and all its amendments are to be treated as one and every part is given effect in determining legislative intent.

2. SAME—STATUTORY INTERPRETATION—LEGISLATIVE INTENT—RAILROAD SIGNS ON PUBLIC HIGHWAYS.
    Amendment of vehicle code in 1958 was designed to restrict official railroad signs or signals on public highways to such as are erected by authority of a statute, public body, or official, and no longer to permit the same to be authorized by a railroad (CLS 1961, §§ 257.615, 257.47).

3. WORDS AND PHRASES—PERSON—CORPORATION—RAILROADS.
    A railroad corporation is a *person,* as such term is used in vehicle code (CLS 1961, § 257.40).

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur, Statutes § 358.
[2, 4, 6] 44 Am Jur, Railroads § 399.
[3] 18 Am Jur 2d, Corporations § 20.
[5] 44 Am Jur, Railroads § 384 *et seq.*
[7, 8] 50 Am Jur, Statutes §§ 344–346.

4. Highways and Streets—Signs—Railroads—Yield Right of Way.

A "yield right of way" sign would deceptively lead a motorist to believe he was about to cross a highway intersection where he notes such signs, instead of a railroad track, hence, such sign, not authorized by public authority, may not be erected by a railroad on public highway (CLS 1961, § 257.615).

5. Railroads—Common-Law Duty to Travelers.

The common-law duty of railroads to maintain grade-crossing protection to highway travelers, in addition to safeguards required by statute, is such as ordinary care and prudence demand.

6. Same—Common-Law Duty to Travelers—Statutory Prohibition.

Defendant railroad's contention that the statutory prohibition against erecting traffic control devices, or railroad signs and signals, does not apply to it because of its common-law duty to warn motorists of the existence and hazardous nature of highway-railroad grade crossings *held,* without merit, as such common-law duty does not give a railroad the privilege of violating a State statute, although requiring it to take such action as the law permits by requesting proper highway authorities, or public service commission for authority *to remedy* the situation (CL 1948, § 469.1 *et seq.,* as amended).

7. Same—Common Law—Statute—Conflict.

No conflict is found between common-law duty of railroad to warn motorists of the existence and hazardous nature of highway grade crossings and the applicable statute prohibiting persons without proper authorization from erecting signs and traffic control devices at such crossings (CLS 1961, § 257.615).

8. Statutes—Common Law—Conflict.

The common law may be changed or modified by statute, and in case of conflict between a common-law duty and a statute, the statute must prevail.

Appeal from Ionia; Bebeau (Leo B.), J. Submitted Division 3 January 5, 1966, at Grand Rapids. (Docket No. 721.) Decided May 11, 1966.

Grand Trunk Western Railroad Company was convicted of unlawfully erecting highway control

signs on public property. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter M. Marks,* Prosecuting Attorney, for the people.

*Rex P. O'Connor,* for defendant.

HOLBROOK, J. On July 21, 1964, in the justice court for the city of Ionia, defendant railroad was charged with unlawfully erecting two "right of way" signs on public highway property at the intersection of its main line track with Plain street in the village of Muir, Ionia county, Michigan, and convicted on July 29, 1964, by said court without a jury; a jury trial having been waived. Defendant appealed to the circuit court and after trial *de novo* before the Honorable Leo B. Bebeau, circuit judge, a jury trial having been waived, by opinion dated September 17, 1964, defendant was found guilty and sentenced to pay a fine and costs. From this sentence, defendant has appealed.

This appeal presents but one question for this Court to review, to wit: Does PA 1949, No 300, § 615 as amended by PA 1958, No 98 (CLS 1961, § 257.615 [Stat Ann 1960 Rev § 9.2315]), prohibit a railroad from erecting traffic control "yield right of way" signs on highway property approaching an intersection with its railroad tracks?

The parties have stipulated to an agreed statement of fact. The pertinent facts are as follows:

In July, 1964, defendant, through its track forces, erected two "yield right of way" signs at the intersection of its main line track with the Plain street crossing in the village of Muir in Ionia county. They were erected because railroad officials believed

that the crossing's physical characteristics perhaps required some sign more forcefully remindful of the motorist's obligation to yield the right-of-way to an approaching train than the standard crossarms sign erected pursuant to CL 1948, § 469.5 (Stat Ann § 22.765). A sharp curve exists on Plain street just south of the railroad crossing, and there is a moderate incline approaching the railroad tracks from that point. The Plain street crossing has a low-volume of both rail and highway traffic. The signs erected were of a type used and approved by the State highway commissioner. The signs were erected by defendant without authorization by any public body or official.

The provision of the statute that defendant was convicted of violating is PA 1949, No 300, § 615, as amended by PA 1958, No 98 (CLS 1961, § 257.615 [Stat Ann 1960 Rev § 9.2315]), and the pertinent part of said act with the additions placed therein by the legislature in 1958 printed in italics, is as follows:

"Sec. 615. (a). *Except with authority of a statute or of a duly authorized public body or official,* no person shall place, maintain, or display along any highway *or upon any structure in or over any highway* any sign, signal, marking, device, blinking, oscillating or rotating light or lights, decoration or banner which *is or* purports to be or is in imitation of or resembles or which can be mistaken *for a* traffic control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any traffic control device or any railroad sign or signal, and no person shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal bearing thereon any commercial advertising."

The facts disclose that defendant erected the signs in question without authorization by any public body or official. Unless a statute permits defendant railroad company to erect traffic control signs, it would appear that the acts of the defendant were contrary to such law. Defendant has not cited any such statute and we have been unable to find one.

It is a common principle of statutory interpretation that a statute and all its amendments are to be treated as one and every part given effect in determining legislative intent. *Smith* v. *City Commissioner of Grand Rapids* (1937), 281 Mich 235; *People* v. *Babcock* (1955), 343 Mich 671.

The intent of the legislature in amending section 615 of the Michigan vehicle code as stated is clarified when we consider that the same amendatory act, PA 1958, No 98, also changed section 47 of the Michigan vehicle code. Said section 47 (CLS 1961, § 257.47 [Stat Ann 1960 Rev § 9.1847]), as it is now worded with the added portions in italics and the words deleted stricken through, is as follows:

" 'Railroad sign or signal' means any sign, signal, or device erected by authority of a *statute or* public body or official ~~or a railroad~~ and intended to give notice of the presence of railroad tracks *or structures* or the approach of a railroad train."

It is evident from the changes made by the 1958 amendment that the legislature· meant to restrict official railroad signs or signals to such as are erected by authority of a statute, public body, or official, and no longer permits the same to be authorized by a railroad.

Defendant denies it is a person under the terms of said act. Section 40 (CLS 1961, § 257.40 [Stat Ann 1960 Rev § 9.1840]) defines "person" as follows:

" 'Person' means every natural person, firm, co-partnership, association, or corporation and their legal successors."

The defendant is a corporation and is clearly within the definition of person as contained in said act.

The wisdom of the legislature in forbidding private individuals, including railroads, to determine the proper signs to be erected on the public highways of our State is well illustrated in this case and so well stated in the learned trial judge's opinion as follows:

"It is difficult to determine just how the use of a 'Yield Right of Way' sign warns motorists of an approaching train or the possibility of such. It does not have that effect in Michigan, and such a sign would deceptively lead a motorist to believe he was about to cross a highway intersection where he notes such signs, instead of a railroad track."

Defendant maintains it has a common-law duty to warn motorists of the existence and hazardous nature of highway-railroad grade crossings, and, therefore, the general statutory prohibition against erecting traffic control devices or railroad signs and signals does not apply to it, and cites *Emery* v. *Chesapeake & Ohio Railway Company* (1964), 372 Mich 663. In that case the railroad crossing was so dangerous that the public service commission ordered the installation of a flashing light signal but gave the railroad nine months to install it. The accident occurred before it was installed. The common-law duty of railroads is to maintain such grade-crossing protection to highway travelers, in addition to safeguards required by statute, as ordinary care and prudence demand. In *Emery,* the railroad, although not in a position to authorize the installation of the flashing light, could have installed the

same after authority had been granted by the public service commission and escaped the common-law duty question raised in the personal injury action.

This common-law duty does not give railroads the privilege of violating the statutory law of our State, but does require them to take such action as the law permits; *i.e.,* where a dangerous grade crossing exists and the signs or warnings present are deemed insufficient by a railroad, it may request the proper highway authorities or the public service commission as provided by law for the authority to remedy the situation.* Such common-law duty of railroads is not confined merely to signs and traffic control devices as the reading of the following cases will disclose: *Lake Shore & M. S. R. Co.* v. *Miller* (1872), 25 Mich 274; *Staal* v. *Grand Rapids & I. R. Co.* (1885), 57 Mich 239; *Guggenheim* v. *Lake Shore & M. S. R. Co.* (1887), 66 Mich 150; *Freeman* v. *Duluth, S. S. & A. R. Co.* (1889), 74 Mich 86 (3 LRA 594); *Willet* v. *Michigan C. R. Co.* (1897), 114 Mich 411; *Grenell* v. *Michigan C. R. Co.* (1900), 124 Mich 141; *Barnum* v. *Grand Trunk W. R. Co.* (1907), 148 Mich 370; *Grand Trunk W. R. Co.* v. *Ives,* 144 US 408 (12 S Ct 679, 36 L ed 485); *Kaminski* v. *Grand Trunk W. R. Co.* (1956), 347 Mich 417; and *Emery* v. *Chesapeake & O. R. Co., supra.*

*Arguendo,* we do not find any conflict between the common-law duty of railroads to warn motorists of the existence and hazardous nature of highway-railroad grade crossings and the applicable statute prohibiting persons without proper authorization of erecting signs and traffic control devices at such crossings. If circumstances do exist causing such a conflict, then the statute must prevail, for the common law may be changed or modified by statute.

---

* CL 1948 and CLS 1961, § 469.1 *et seq.,* as amended (Stat Ann and Stat Ann 1965 Cum Supp § 22.761 *et seq.*).—REPORTER.

*Smith* v. *Martin* (1900), 124 Mich 34; *Boyer* v. *Backus* (1937), 282 Mich 701.

The act of the defendant railroad in erecting the signs without public authority and without a statute authorizing the same was a violation of the law. The conviction was proper.

Affirmed.

WATTS, P. J., and FITZGERALD, J., concurred.