## NAOMI D. BISSEN *v.* CHIYOKO FUJII.

### No. 4846.

MARCH 12, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON,
AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

Plaintiff, Naomi D. Bissen, and defendant, Chiyoko Fujii, were involved in an automobile accident at an intersection in the City of Honolulu on November 12, 1966. An action was filed by plaintiff against defendant in the First Circuit Court on July 25, 1968. Defendant in her answer raised the defense of contributory negligence. Plaintiff's motion to strike the defense on the ground that compara-

tive negligence and not contributory negligence was the law of this jurisdiction was denied and plaintiff was allowed to take this interlocutory appeal from the order denying the motion to strike.

In *Loui* v. *Oakley,* 50 Haw. 260, 265, 438 P.2d 393, 397 (1968), this court stated in a footnote that it may be time to reconsider the judge-made rule of contributory negligence, citing *Maki* v. *Frelk,* 85 Ill. App. 2d 439, 229 N.E.2d 284, 286 (1967), wherein the Illinois appellate court espoused the doctrine of comparative negligence in place of contributory negligence.

It is interesting to note that the Illinois Supreme Court reversed the ruling of the appellate court in *Maki* v. *Frelk,* 40 Ill. 2d 193, 239 N.E.2d 445 (1968). The court refused to replace the doctrine of contributory negligence with the rule of comparative negligence and stated at page 196: "such a far-reaching change, if desirable, should be made by the legislature rather than by the court." It went on to say that it considered the legislature to be manifestly in a better position than the court to consider the numerous problems involved in the adoption of the comparative negligence doctrine.

Our legislature, in the 1969 session, enacted a comparative negligence statute, HRS § 663-31, which became effective on July 14, 1969. The statute is not applicable to this suit under a provision reading that it "shall not be retroactive and shall affect only those claims accruing after its effective date."

The sole issue before us is whether the doctrine of contributory negligence or comparative negligence should be applied in this case.

At the time the claim for relief in this action accrued on November 12, 1966, the rule of contributory negligence was the recognized law of this jurisdiction. In *Loui* v. *Oakley, supra,* decided on March 1, 1968, a footnote implic-

638

itly acknowledges this. Also as late as June 7, 1968, both the majority and dissenting opinions in *Young* v. *Price,* 50 Haw. 430, 442 P.2d 67 (1968) recognized the doctrine of contributory negligence to be the rule of our jurisdiction.[1]

Article III, Section 1 of our State Constitution vests the legislative power of the State in the legislature. The legislative power has been defined as the power to enact laws and to declare what the law shall be. *Gas & Electric Sec. Co.* v. *Manhattan & Queens Traction Corp.,* 266 F. 625 (2d Cir. 1920); *People* v. *Puckett,* 324 Ill. 293, 155 N.E. 319 (1927); *Browne* v. *City of New York,* 213 App. Div. 206, 211 N.Y.S. 306 (1925), *aff'd,* 241 N.Y. 96, 149 N.E. 211 (1925). Under this power the legislature also has authority to enact statutes to modify or change, for the future, common law as may have been established by decisions of courts. *People* v. *Grand Trunk Western R.R.,* 3 Mich. App. 242, 142 N.W.2d 54 (1966); *S. H. Kress & Co.* v. *Superior Ct.,* 66 Ariz. 67, 182 P.2d 931 (1947). Certainly, a legislative enactment adopting the doctrine of comparative negligence in place of the common law rule of contributory negligence is strictly within the legislative power. The act in no way attempts to interfere with the judicial functions and no one has questioned its legality as an unconstitutional encroachment of the judicial branch of government.

We should recognize that, although courts, at times, in arriving at decisions have taken into consideration social needs and policy, it is the paramount role of the legislature as a coordinate branch of our government to meet the needs

---

[1] The two questions decided by this court: (1) admission of demonstrative evidence and (2) the refusal of the trial court to give instructions requested by plaintiff were on the sole issue of contributory negligence of the plaintiff as a defense. Justice Levinson wrote the dissenting opinion, joined by Justice Marumoto, for the affirmance of a judgment in favor of defendant which denied recovery to plaintiff on the defense of contributory negligence.

and demands of changing times and legislate accordingly.

Although the courts frequently venture into judicial law making where there are gaps in substantive law, particularly in the field of torts, once the legislature has acted, it is not for us to evaluate the wisdom of legislative action, including the determination regarding retroactive or prospective applicability. Even Professor Fleming James, Jr., co-author of Harper and James, *The Law of Torts* (1956), and who is one of those "who accept or welcome the present regeneration of judicial law making in the field of torts," states: "All concede that it is proper legislative function to make and change the law and that the courts should always respect the exercise of this function by a coordinate branch of government."[2]

It should be remembered that though this court makes law on a case-by-case method, it is not a legislature. Further, at this time, we should not engage in "wholesale" legislation such as the adoption of the doctrine of comparative negligence in place of contributory negligence. Such act on our part may frustrate the trial courts in their attempt to solve a countless number of questions and problems with which they will be faced.

The statute is effective for tort claims which accrued after July 14, 1969, and to adopt the doctrine of comparative negligence for this case would create unnecessary and unwarranted confusion in the law. We should use judicial restraint and not leave any implication that we are trying to "outdo" the legislature.

Affirmed.

*Stuart M. Cowan* (*Greenstein & Cowan* of counsel) for plaintiff-appellant.

*Herbert K. Shimabukuro* (*Libkuman, Shimabukuro & Ventura* of counsel) for defendant-appellee.

---

[2] Fleming, *Comment on Maki v. Frelk*, 21 Vand. L. Rev. 891, 893 (1968).

DISSENTING OPINION OF LEVINSON, J.

I dissent.

I would have this court adopt the doctrine of pure comparative negligence for those cases, not yet final, which arose prior to the effective date of HRS § 663-31 (Supp. 1969). In order to reach this conclusion it is necessary to examine the context in which this case arises. This background provides the case with some peculiar and, I think, controlling features.

On March 1, 1968 in *Loui v. Oakley*, 50 Haw. 260, 438 P.2d 393 (1968), a case which provided for rough apportionment of damages among several successive tort-feasors, this court signaled the members of the Hawaii bar and other interested parties that contributory negligence, as a judge-made rule of law, was subject to being judicially replaced by a comparative negligence standard. 50 Haw. at 265 n.5, 438 P.2d at 397 n.5.[1] The signal thus given, it was only a matter of time before a case with the proper facts was presented to this court on appeal.[2] Indeed, one trial

---

[1] The footnote in Loui v. Oakley reads as follows:

Historically, the concept of contributory negligence appears to have developed as

a convenient instrument of control by which the liabilities of the rapidly growing industries were curbed and kept within bounds. Maki v. Frelk, 85 Ill. App. 2d 439, 229 N.E.2d 284, 286 (1967).

It may be time to reconsider the applicability of the doctrine of contributory negligence, a judge-made rule, in light of the mores of the day. Perhaps it should be judicially replaced by a comparative negligence standard, as an Illinois court has done after concluding that the doctrine of contributory negligence is "unsound and unjust under present conditions", and that courts have "not only the right, but the duty to abolish the defense." Maki v. Frelk, *supra* at 452, 229 N.E.2d at 291. *See also*, Keeton, *Creative Continuity in the Law of Torts*, 75 Harv. L. Rev. 463, 506-09 (1962).

[2] The case of Young v. Price, 50 Haw. 430, 442 P.2d 67 (1968), which involved an accident that occurred in 1958, did not present the question to this court whether contributory negligence or comparative negligence was the law of Hawaii. It is unthinkable that, by merely entertaining an appeal and ruling on an evidentiary matter and the jury instructions, this court "recognized the doctrine of contributory negligence to be the rule of our jurisdiction" as the majority in the present case would have it appear. Such a conclusion is at war with even the most strained reading of the case. There is no holding, no dictum, no recognition, and no implication in Young v. Price that the doctrine of contributory negligence was affirmed. And as such that case is irrelevant, useless and, indeed, misleading in deciding this case on appeal.

judge began giving comparative negligence instructions shortly thereafter. *E.g., Kono* v. *Auer,* Civ. No. 17315 (First Cir. Ct. May 10, 1968), *rev'd on other grounds* 51 Haw. 273, 458 P.2d 661 (1969).

Ironically, yet quite predictably, the 1969 Hawaii legislature enacted a comparative negligence statute, HRS § 663-31 (Supp. 1969). The new statute, which became effective July 14, 1969, approximately seven months after the notice of appeal in the present case was filed, provided for a "partial" or "modified" form of comparative negligence. Under the new statute where the negligence of the person seeking recovery is *less* than that of the person against whom the recovery is sought, recovery is not barred, but damages allowed are diminished in proportion to the amount of negligence attributable to the person seeking recovery. If the negligence of the person seeking recovery is *greater* than that of the person against whom recovery is sought he is barred from recovery just as he was under the rule of contributory negligence. The entire act is set out in the footnote below.[3]

---

[3] Act 227 [Session Laws of Hawaii, 1969 Reg. Sess.]
A Bill for an Act Relating to Tort Actions Based on Negligence and Amending Chapter 663—Hawaii Revised Statutes.
Be It Enacted by the Legislature of the State of Hawaii:
SECTION 1. Chapter 663 of the Hawaii Revised Statutes is amended by adding a new Part to be appropriately designated and to read as follows:
PART [31] COMPARATIVE NEGLIGENCE
"Section 663. Contributory negligence no bar; comparative negligence; findings of fact and special verdicts.
"(a) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.
"(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:
"(1) The amount of the damages which would have been

The importance of HRS §.663-31 to the present case is that the Hawaii legislature recognized the unsoundness of the doctrine of. contributory negligence as a defense in negligence suits. However, the act was drafted so as not to apply retroactively. "The provisions of this Act shall not be retroactive and shall affect only those claims accruing after its effective date [July 14, 1969]." Act 227 § 2, Session Laws of Hawaii, 1969 Reg. Sess. 423.

The task of the court in this case is to determine in these circumstances (1) whether this court should act at all with respect to those claims accruing before the effective date of HRS § 663-31; and, (2) assuming that some action is to be taken, which rule of comparative negligence ought to be adopted during that period. My position is that this court should act and that the "pure" form of comparative negligence should be adopted.

## I. JUDICIAL OVERRULING OF THE DOCTRINE OF CONTRIBUTORY NEGLIGENCE.

The doctrine of contributory negligence has been widely recognized as antiquated and unrealistic; its disabilities have been well chronicled in the literature.[4] One distin-

---

recoverable if there had been, no contributory negligence; and
 "(2) The degree of negligence of each party, expressed as a percentage.
 "(c) Upon the making of the finding of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the verdict in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made, provided, however, that if the said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court will enter a judgment for the defendant."
 SECTION 2. The provisions of this Act shall not be retroactive and shall affect only those claims accruing after its effective date.
 SECTION 3. This Act shall take effect upon its approval.
 (Approved July 14, 1969)

 [4] *Report of the American Bar Association Special Committee on Automobile Accident Reparations* 74 (1969). 2 Harper & James, *The Law of Torts* §§ 22.1-22.3, at 1193-1209 (1956); Prosser on Torts § 66, at 443-44 (3d ed. 1964).
 The classic article is Mole & Wilson, *A Study of Comparative Negli-*

guished writer has even prepared a ready-made opinion overruling the judge-made doctrine of contributory negligence. That opinion succinctly and carefully states the most forceful policies behind replacing contributory negligence with some form of comparative negligence. Professor Robert E. Keeton writes:

"The rule that contributory negligence is a complete bar, if ever a wise doctrine, was supportable only under circumstances that no longer exist in our current economic, social, and political environment. Though its foundation is a premise of liability based on fault, it departs from an implication of that premise by visiting an entire accidental loss on one of the parties whose negligent conduct combined to cause it. The same is true of any qualification of the rule of contributory negligence, such as the doctrine of last clear chance, that shifts the entire loss rather than shifting none of it. It is also true of the analogous rule against contribution among tortfeasors. Recognition of that inconsistency with respect to the rule against contribution has doubtless been a significant factor in the statutory and decisional trend toward contribution—a trend compatible with a principle of apportionment. Moreover, the rule of contributory negligence is so out of keeping with the prevailing thought of the community that to a very considerable degree it has been vitiated by verdicts that in effect apply a rule of apportionment in direct opposition to jury instructions—a situation that promotes disrespect for law and legal institutions.

"A principle of comparative fault, involving apportionment of the loss among the several negligent con-

---

gence. 17 Corn. L.Q. 333. 604 (1932). See also Maloney, *From Contributory to Comparative Negligence: A Needed Law Reform*, 11 Univ. Fla. L. Rev. 135 (1958) ; Philbrick, *Loss Apportionment in Negligence Cases*, 99 Univ. Pa. L. Rev. 572, 766 (1951) ; Prosser, *Comparative Negligence*, 51 Mich. L. Rev. 465 (1953) ; Turk, *Comparative Negligence on the March* (pts. 1 & 2), 28 Chi.-Kent L. Rev. 189, 304 (1950).

tributors to its occurrence, is more consistent with the premise of liability based on fault. It is also a preferable rule from the point of view of its practical impact upon claims for compensation of losses arising from accidental injury...." R. Keeton, *Venturing to Do Justice* 51-52 (1969). Keeton, *Creative Continuity in the Law of Torts*, 75 Harv. L. Rev. 463, 508-09 (1962).

While it is almost universally conceded that using contributory negligence as a complete bar to recovery in all cases is without merit, much of the controversy about substituting comparative for contributory negligence has focused on who is the proper decision-maker, the court or the legislature. The topic has been vigorously debated in the literature by the leading scholars in the field. *See, e.g.,* James, Kalven, Keeton, Leflar, Malone and Wade, *Comments on Maki v. Frelk — Comparative v. Contributory Negligence: Should the Court or Legislature Decide?*, 21 Vand. L. Rev. 889 (1968). The result of this academic heat has been very little action on the part of the judiciary in the United States. In this century no state court has had the conviction, the courage, or the temerity to overrule the doctrine of contributory negligence except for a short-lived victory in Illinois. See *Maki v. Frelk*, 85 Ill. App. 2d 439, 229 N.E.2d 284 (1967), *rev'd,* 40 Ill. 2d 193, 239 N.E.2d 445 (1968) (5-2 with Ward, J. dissenting joined by Schaefer, J.). A majority of this court would likewise allow contributory negligence to endure in those cases not covered by the statute.

The action of the Hawaii legislature in adopting the doctrine of comparative negligence as the rule to be applied in this jurisdiction takes much of the force out of whatever thrust the arguments against the judicial overruling of contributory negligence ever had. Objections against judicial action in general have centered on the fact that the legislature is the more responsive and representative branch of government. Also it is argued that the legislature is

especially able to draft a comprehensive new statute in this particular field. It has been thought that the courts cannot do this except on a case by case basis. See discussion in Keeton, *Creative Continuity in the Law of Torts,* 75 Harv. L. Rev. 463, 476-78 (1962); Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law,* 48 Minn. L. Rev. 265, 299 (1963).[5] But when the Hawaii legislature realizes the wisdom of replacing contributory negligence with a form of comparative negligence and provides a statutory framework, this court's task should be appreciably easier in merely filling in an interstitial inequity left by the legislation. It is a temporal interstice which penalizes those claims arising before the effective date of the statute while those claims covered by the statute are rewarded purely because of the arbitrary time of the accident.

While I have alluded to HRS § 663-31 as helpful in removing some of the objections to judicial overruling of contributory negligence, the act states that "the provisions of this Act shall not be retroactive and shall affect only those claims accruing after its effective date." Yet it is indeed ironical for this court to conclude that the comparative negligence statute, which does not expressly purport to govern those cases arising before its effective date, precludes this court from arriving at a fairer result; one which the legislature has adopted prospectively and which I think we otherwise would have adopted in principle had the statute not been enacted.[6]

---

[5] In the intermediate appellate court opinion of Maki v. Frelk, *supra,* the Illinois court of appeals adopted in its entirety the Wisconsin Comparative Negligence Statute thus squarely meeting the objection that courts are unable to handle such sweeping changes in the law.

[6] In a similar context the United States Supreme Court has said: "It would be irresponsible judicial administration to dismiss a suit because of an intervening Act which has no possible application to events long preceding its enactment." Sullivan v. Little Hunting Park, 396 U.S. 229, 240 (1969). (citations omitted)

Had the legislature intended that contributory negligence continue as the law of Hawaii until July 14, 1969, it could have said so expressly rather than merely stating that the statute did not apply retroactively. Any conscious intent could have been expressed rather than left open to interpretation where an unjust rule of law barring fair compensation of injured persons exists. This is particularly true in light of the warning given by this court in *Loui* v. *Oakley,* 50 Haw. 260, 265 n.5, 438 P.2d 393, 397 n.5 (1968), that the doctrine of contributory negligence was open to judicial reconsideration, and the practice of at least one circuit court judge to give instructions on comparative negligence.

In the past this court has expressed a willingness and a duty to depart from long established rules, and a readiness to act where precedent is lacking, in order to effect desirable changes in the common law. *Lemle* v. *Breeden,* 51 Haw. 426, 462 P.2d 470 (1969) (implied warranty of habitability in rental agreements); *Pickard* v. *City & County,* 51 Haw. 134, 452 P.2d 445 (1969) (invitee-licensee distinction eliminated); *Tamashiro* v. *De Gama,* 51 Haw. 74, 450 P.2d 998 (1969) (parent-child tort immunity abolished); *Fergerstrom* v. *Hawaiian Ocean View Estates,* 50 Haw. 374, 441 P.2d 141 (1968) (right of privacy protected by tort action); *Lum* v. *Fullaway,* 42 Haw. 500, 502 (1958). Where this court is not foreclosed from acting by an express legislative prohibition, it should strive to reach what is the fairest result in the circumstances. In this case such a result should be the abandonment of the rule of contributory negligence and its replacement by some form of comparative negligence.

## II. JUDICIAL ADOPTION OF A RULE OF PURE COMPARATIVE NEGLIGENCE.

The doctrine of comparative negligence comes in at

least two forms which may be characterized as "pure" and "partial". In the pure or pristine form of comparative negligence, the concept of recovery according to fault is extended to its logical limits without regard to whether the plaintiff's negligence is greater than the defendant's. On the other hand, "partial" comparative negligence usually limits recovery to those situations where the negligence of the plaintiff is *less* than that of the defendant. Where the plaintiff's negligence is *greater* than the defendant's, the plaintiff is completely barred from recovery just as he was under the admittedly unjust doctrine of contributory negligence. Thus if the plaintiff is 51% negligent, he does not recover; but if he is 49% negligent, he may recover. This has prompted reasoned authority to regard the modified form of comparative negligence as a result of "political expedience"[7] and a "misfit in a system designed to distribute responsibility according to degrees of fault."[8]

Whether the partial form of comparative negligence is merely unwise or rises to the level of drawing an unconstitutional line between two classes of individuals seeking recovery is not before this court today. Further, the statute is not before us except as an alternative among others to be considered. It may be that a legitimate state interest is rationally promoted by the 50% cutoff line or it may be that such a cutoff is simply arbitrary and a denial of equal protection of the law. *See generally, Developments in the Law—Equal Protection,* 82 Harv. L. Rev. 1069, 1077-87 (1969). In taking a tentative first step for-

---

[7] Prosser on Torts § 66 at 448 (3d ed. 1964).

[8] Campbell, *Recent Developments in the Law of Negligence in Wisconsin—Part II,* 1956 Wis. L. Rev. 4, 21 (1956). An excellent critique of the "partial" form of comparative negligence appears at page 12 of the Minority Recommendations and Report to the *Report of the American Bar Association Special Committee on Automobile Accident Reparations* (1919). The majority of the committee recommended the partial form of comparative negligence. *Id.* at 73.

ward in abrogating contributory negligence, it appears to me that the new statute has only substituted another version of contributory negligence at that point where the plaintiff's degree of fault is greater than that of the defendant. Such a cutoff point is subject to the same objections raised with respect to contributory negligence. It becomes all the more arbitrary as the theoretical plaintiff who is 49% negligent recovers 51% of his damages, but another plaintiff, 51% negligent, gets nothing. Indeed, were it not for the apparent lack of rationality behind the statute, I would be tempted to propose a cognate rule for Hawaii during the period at hand on the basis of treating like cases alike, without any temporary or temporal inequities owing to the date of claim.

If our tort system of liability is to be based upon fault, we must be faithful to that premise. Therefore, I would adopt the pure form of comparative negligence during the period prior to the effective date of HRS § 663-31 and wait for another case to raise properly before this court the equal protection objections to the statute. I would hold that in all actions resulting in personal injury or injury to property, the contributory negligence of the person injured or of the owner of the property, or of the person having control of the property, shall not bar a recovery, but damages awarded shall be diminished in proportion to the amount of negligence attributable to the injured person or to the owner of the property or to the person having control of the property. This rule should apply to all claims, the adjudication of which is not final, accruing prior to July 14, 1969, the effective date of the statute. Being of this opinion and being in the minority, I respectfully dissent.